PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

F I L E D
United States Court of Appeals
Tenth Circuit

DEC 29 1999

PATRICK FISHER
Clerk

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

GREGORY J. BROWN,

  Defendant-Appellant.

No. 99-8021

---

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 98-CR-58-J)

---

Ronald G. Pretty, of Cheyenne, Wyoming, for Appellant.

Lisa E. Leschuck, Assistant United States Attorney, (David D. Freudenthal, United States Attorney, with her on the brief), of Cheyenne, Wyoming, for Appellee.

---

Before **LUCERO, HOLLOWAY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

Defendant-Appellant Gregory J. Brown was convicted on two counts of violating 36 C.F.R. § 261.10(c). Brown challenges the sufficiency of the evidence on each count. This court concludes there was sufficient evidence on each count to support the convictions for knowingly conducting a commercial work activity on Forest Service land without a special use authorization permit. We also conclude that receiving remuneration and assessing a separate delivery charge are not required elements of this crime. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

## II. FACTS AND PROCEDURAL HISTORY

The town of Centennial, Wyoming lies approximately two miles east of the Medicine Bow National Forest (the "Forest"). The State of Wyoming has an easement, Wyoming State Highway 130, over the road which runs west from Centennial through the Forest. This road is also designated as Forest Development Road 12.

In the winter, Highway 130, or Forest Development Road 12, is closed to west-bound traffic at a place called Green Rock. Green Rock includes an area which allows a U-turn where the road ends; snowmobilers traditionally use this turnaround as a drop-off point for their equipment. There is also a designated

parking area just east of the turnaround. The Green Rock area is Forest Service Property and is supervised by the National Forest Service.

During the summer of 1997, Brown inquired at the Forest Service office in Laramie, Wyoming, about a special use permit application for the outfitting and guiding of snowmobile tours.[1] Brown asked whether he would need a special use permit if his operations were not on Forest Service lands but he delivered equipment into the Forest. Elrand Denson, a lands and special use supervisor for the U.S. Forest Service, told Brown a permit was needed in those circumstances, and he gave Brown a permit application. Brown never returned the application.

Responding to Brown's newspaper advertisement for snowmobile rentals, Keith Barlow called and made arrangements with Brown to rent a snowmobile for $200. Brown took Barlow's credit card number over the phone, but they agreed Barlow would pay by check when they met. Brown told Barlow to meet him in the Green Rock parking lot on the morning of February 1, 1998. Brown said he would take Barlow out, show him where to ride, and explain other things about snowmobiling.

They met as planned, and Brown provided Barlow and Barlow's son with a snowmobile and helmets. Brown went snowmobiling with the Barlows for over

---

[1]The fee for a special use permit is $75 per year, and the Forest Service collects three percent of the permittee's gross profits. Permitees must also have a minimum of $300,000 liability insurance.

an hour, and then Barlow and his son rode on their own. They agreed to meet back in the parking lot at Green Rock in the afternoon.

When Barlow returned to the parking lot that afternoon, Curtiss Orde, a supervisory law enforcement officer for the U.S. Forest Service, stopped him and asked for the snowmobile registration. Barlow told him the snowmobile was rented. Orde followed Barlow to where Brown was sitting in the parking lot. Barlow offered to pay Brown for the snowmobiles, but Brown told Barlow it was free. Brown never billed Barlow.

Officer Orde believed Brown was operating a business without a special use authorization permit as required by the regulations and told Brown so. Orde also told Brown that delivery of goods or services to Forest lands required a special use permit. He then directed Brown to cease and desist from anything appearing to be a commercial operation in the Forest.

A day or two later, Brown again went to the Forest Service office in Laramie to discuss the permit application with Orde and Denson. Brown asked whether he would need a permit if his operation took place completely outside the Forest. He again also asked about the need for a permit if he merely delivered the snowmobiles onto or picked them up from the Forest Service lands. Orde and Denson again told Brown that if his operation was entirely outside the Forest, he

-4-

would not need a permit. If he delivered goods or services in the National Forest, however, they indicated he would need a permit.

Brown did not cease doing business on Forest Service lands. In March 1998, Terry Thompson rented snowmobiles from Brown after Thompson called Brown's toll-free number. Brown agreed to rent him two snowmobiles, and he took Thompson's credit card number over the phone. The day of the Thompson rental, Brown dropped off the two snowmobiles at Mountain Meadows Cabins ("Mountain Meadows"). Michelle Borer and her husband run Mountain Meadows, which is approximately eight miles west of Centennial. Highway 130, or Forest Service Road 12, is closed about a mile and a half east of the cabins. Mountain Meadows is thus on Forest Service property.

When he dropped off the snowmobiles, Brown handed Borer a liability waiver form and asked her to have Thompson sign it. Thompson picked up the snowmobiles that day, and he signed the liability form. Thompson rode for several hours and then left the snowmobiles back at Mountain Meadows. Brown later retrieved the snowmobiles. Thompson was charged $468 on his credit card, which included the rental of two snowmobiles and the cost of repair for one snowmobile.

Brown was ultimately convicted following a non-jury trial on two counts of selling or offering merchandise for sale or conducting a work activity or service

in the National Forest without a special use authorization permit in violation of 36 C.F.R. § 261.10(c) (the "Regulation").  The Regulation provides:

> The following [is] prohibited [on Forest Service Land]:
> . . . (c) Selling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization.

*See also* 16 U.S.C. § 551.  Brown's sentence was ninety-days imprisonment, to be followed by two-years supervised probation, and he was ordered to pay $20 in special assessments.

## III. DISCUSSION

### A. Standard of Review

Brown argues there was insufficient evidence to support his convictions.  In reviewing a challenge to the sufficiency of the evidence to support a conviction, this court must view the evidence in the light most favorable to the government.  We must determine if there is sufficient direct and circumstantial evidence, together with reasonable inferences to be drawn therefrom, from which a trier of fact could find the defendant guilty beyond a reasonable doubt.  *See United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997).  To the extent Brown challenges the proper legal interpretation of the Regulation, this court reviews those issues *de novo.  See United States v. Phelps*, 17 F.3d 1334, 1337 (10th Cir. 1994).

### B. Count One: The Barlow Transaction

Brown's specific challenge to the sufficiency of the evidence on the Barlow transaction is twofold. First, Brown argues there was insufficient evidence that he sold or offered for sale any merchandise or conducted any work activity or service in the Forest. *See* 36 C.F.R. § 261.10(c). Second, Brown argues the receipt of remuneration or pecuniary gain is an element of § 261.10(c), and that there was no evidence he received remuneration from Barlow.

1) *Selling or Offering for Sale Merchandise or Conducting a Work Activity*

In this case, Brown agreed to rent a snowmobile to Barlow for $200 and he delivered the snowmobile on Forest Service property. In a factually similar case, a defendant operated a recreational campground and a canoe rental service on private land near a National Forest. *United States v. Richard*, 636 F.2d 236, 237 (8th Cir. 1980). From that site he transported canoes to the National Forest, where they were launched from a Forest Service boat ramp. *See id*. at 238. The defendant would later transport his customers and the canoes from the National Forest back to their campsite. *See id*. The defendant in *Richard* argued he was not required to obtain a special use permit because his business was located on private property and he did not charge a fee for hauling the equipment, but only

for renting it.  *See id*. at 239.  The court, which was interpreting a slightly different version of the Regulation,[2] stated:

> [i]f an interpretation of the regulation were . . . as restrictive as the defendant urges, the entire purpose of the regulation would be defeated.  An individual could bypass all the requirements that are part of the special use permit simply by storing his [equipment] outside the Forest Service boundaries and hauling them on the Forest Service after the negotiations had been completed.

*Richard*, 636 F.2d at 239 (quoting opinion of magistrate judge).  The *Richard* court thus held that hauling canoes to a Forest Service boat ramp and picking up customers from the National Forest violated the Regulation.  *See id*.[3]

---

[2]The regulation which the *Richard* court interpreted prohibited "[s]elling or offering for sale any merchandise, conducting any kind of business enterprise or performing any kind of work unless authorized by . . . [a] permit."  *United States v. Richard*, 636 F.2d 236, 238 (8th Cir. 1980).  "[C]onducting any kind of business enterprise or performing any kind of work unless authorized" was amended to read "conducting any kind of work activity or service unless authorized."  *See* 46 Fed. Reg. 33518, 33520 (1981).  Nothing in the history of this amendment suggests that the conduct in question in *Richard* would no longer violate the regulation here.  *See* 46 Fed. Reg. at 33518-19.  In addition, at least one court since the amendment has relied on *Richard* to support a conviction for similar conduct under § 261.10(c).  *See United States v. Peterson*, 897 F. Supp. 499, 500 (D. Colo. 1995).

[3]A defendant in another, similar case admitted he had hauled horses onto Forest Service land without a permit.  *See Peterson*, 897 F. Supp. at 500.  The defendant in *Peterson* argued he did not violate the Regulation because he had merely brought in horses for a group which was then self-guided.  *See id*.  The district court nevertheless found that the defendant was carrying on a work activity and service in violation of § 261.10(c).  *See id.* at 501; *see also United States v. Carter*, 339 F. Supp. 1394 (D. Ariz. 1972).

As in *Richard*, Brown delivered the snowmobile to Barlow on Forest Service property, notwithstanding the operations on non-federal land.[4]  This was selling or offering merchandise for sale and conducting a work activity or service in the Forest, and it requires a special use authorization permit under the Regulation.  *See* 36 C.F.R. §261.10(c).

2) *Remuneration or Pecuniary Gain*

Brown argues that in order to find him in violation of the Regulation, the government must show he actually *received* remuneration or other gain from Barlow for delivering goods in the Forest.  Brown argues he did not receive any remuneration or other financial gain from Barlow, and therefore this "element" was not met.

First, this court notes the Regulation expressly interdicts the sale or *offer* of sale of goods.  *See* 36 C.F.R. § 261.10(c).  There is evidence of both offer by Brown and acceptance by Barlow.  Brown and Barlow agreed on a price of $200, and Brown took Barlow's VISA card number.  The final exchange of funds never took place simply because Brown saw Barlow speaking to Officer Orde prior to Barlow's final payment.  Receipt of payment, however, is not a required element under § 261.10(c).  The key is whether the sale or offer of sale of merchandise or

---

[4] Brown ignores that he took the Barlows out for the first few miles to show them which trails to use.

the work activity or service is a commercial activity.[5] *See Richard*, 636 F.2d at 240. *See also United States v. Strong*, 79 F.3d 925, 928-30 (9th Cir. 1996); *United States v. Peterson*, 897 F. Supp. 499, 501 (D. Colo. 1995); *United States v. Bartels*, No. F053881, 1998 WL 289231, at *2-*4 (D. Colo. 1998). Evidence that Brown was engaged in exactly the conduct prohibited without a special use authorization permit is abundant in the instant case. Barlow responded to Brown's newspaper advertisement, and he gave Brown his credit card number over the phone. Barlow thus fully expected to pay for the experience. Brown was providing a service, as well as goods, by delivering snowmobiles and equipment

---

[5] Separate regulations govern noncommercial activities on Forest Service lands.

> A special use authorization is not required for noncommercial recreational activities such as camping, picnicking, hiking, fishing, hunting, horseback riding, and boating, as well as noncommercial activities involving the expression of views such as assemblies, meetings, demonstrations, and parades . . . .

36 C.F.R. § 251.50(c).

There are, however, exceptions to § 251.50(c). Selected Forest Supervisors, specifically delineated by the regulations, have the authority to issue orders which close or restrict all use, including noncommercial uses, of roads or areas over which the supervisor has jurisdiction. *See id*. § 261.50(a)-(b); *id*. § 251.50(c)(1). In addition, "the Chief, and each Regional Forester to whom the Chief has delegated authority, may issue regulations prohibiting acts," including noncommercial acts, "within . . . the area over which he has jurisdiction" for specific purposes such as fire prevention. *Id*. § 261.70(a); *id*. § 251.50(c)(2).

Finally, "noncommercial group uses," activities which involve a group of seventy-five or more people as either participants or spectators, require a special use authorization permit. *Id*. § 251.50(c)(3); *id*. § 251.51; *see also id*. § 251.54(d)(2)(i); *id*. § 251.56(a)(1)(ii)(G) & note.

onto Forest Service lands, and he was motivated by the prospect of commercial gain in doing so. This was a commercial activity, and Brown violated the Regulation by offering merchandise for sale and providing a service without the permit required.

## C. Count 2: The Thompson Transaction

Brown specifically challenges two aspects of his conviction for the Thompson transaction. Brown argues (1) there must be evidence of a specific drop-off charge, and there was none here; and 2) there must be evidence he knowingly, or with specific intent, delivered property to federal land, and there was no *mens rea* evidence presented here.

### 1) *No Drop-Off Charge*

Brown argues that because the rental agreement was negotiated with Thompson off federal land, and because he did not charge a specific fee for hauling the snowmobiles onto federal land, his conviction must be reversed. A similar argument failed in *Richard*. *See* 636 F.2d at 240. Brown delivered the snowmobile equipment in the Forest and required Thompson to sign a liability form there. This court will not reverse his conviction simply because he did not separately itemize the delivery service in Thompson's payment. Brown's delivery service, as well as the actual delivery of goods into the Forest, violated the Regulation.

2) *"Knowingly" delivered property*

Without citation to authority, Brown additionally argues that the government must show he knew Mountain Meadows was on Forest Service property. This court need not decide if the Regulation contains a *mens rea*[6] requirement, however, because the evidence supports an inference Brown knew he was on Forest Service land. Brown drove to the Green Rock parking lot, unloaded the snowmobiles, and drove them a mile and a half over the closed road to Mountain Meadows.[7] In addition, Brown had at least three conversations with Forest Service personnel regarding the requirements for a special use permit in the area. This evidence is sufficient to infer Brown knew he was selling or offering for sale merchandise or conducting a work activity or service on Forest Service property. *See* 36 C.F.R. § 261.10(c).

## IV. CONCLUSION

For the reasons stated above, this court concludes there was sufficient evidence to support Brown's convictions, and **AFFIRMS**.

---

[6]*See, e.g.*, *United States v. Unser*, 165 F.3d 755, 761-64 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 40 (1999). (The unlawful possession and operation of a motor vehicle within a National Forest Wilderness Area is an offense with no *mens rea* requirement.)

[7]A sign on Highway 130 announces that the traveler is entering the Medicine Bow National Forest.