**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bryan Avery HOWE, Defendant–
Appellant.**

No. 01–1245.

United States Court of Appeals,
Tenth Circuit.

June 7, 2002.

---

Before LUCERO and ANDERSON, Circuit Judges, and BROWN,* Senior District Judge.

---

\* The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

\*\* The case is unanimously ordered submitted without oral argument pursuant to Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding prece-

**ORDER AND JUDGMENT** \*\*

LUCERO, Circuit Judge.

Bryan Avery Howe was convicted by a jury on two federal counts relating to an armed bank robbery and was sentenced to consecutive prison terms of fifty-five months and eighty-four months on the two counts. On appeal he contends that remarks offered to the jury by the trial court negated his presumption of innocence and that the government presented insufficient evidence for a jury to find beyond a reasonable doubt that the bank he robbed was insured by the Federal Deposit Insurance Corporation ("FDIC"). We have jurisdiction over Howe's appeal under 28 U.S.C. § 1291 and Fed. R.App. P. 4(b), and affirm.

I

Howe and two codefendants were indicted in federal district court on one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), and on one count of aiding and abetting one who used and brandished a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii).

FirstBank of Greeley, located in Colorado, was robbed on October 31, 2000, by a man wearing camouflage clothing, a hood over his head, and a mask over his face. The gunman had bank employees fill his duffel bag with over $20,000 in cash, but mixed in with the cash were red dye packs that were intended to go off and spray a mace-like substance and red dye to mark the stolen money with a noticeable odor and color. At the scene of the robbery

dent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

police found over $18,000 of the marked money, along with a sub-machine type gun.

Among other evidence presented by the government at trial was witness testimony that Howe had borrowed a car on the day of the robbery and returned it to its owner with red dye stains on the passenger side and a black ski mask inside. The witness also testified that Howe's fingertips were stained pink. Other witnesses testified that Howe possessed money with pink and red markings, and that he had left red and pink markings in the bathtub and bath mat of a motel room he had occupied. In addition, Howe's codefendants testified pursuant to plea agreements with the government that they helped Howe plan and commit the robbery.

Howe was convicted by a jury on both counts alleged in the indictment.

## II

■■ Howe claims that the district court committed reversible error by undermining his presumption of innocence through sua sponte comments made to the jury following the testimony of one of his codefendants. Because Howe lodged no objection at trial with respect to this allegation of error, we review his claim only for plain error. *See United States v. Hughes*, 191 F.3d 1317, 1322 (10th Cir.1999). Plain error requires (1) an error, (2) that is plain in that it is clear or obvious under current law, and (3) that affects substantial rights. *United States v. Fabiano*, 169 F.3d 1299, 1302 (10th Cir.1999). "An appellate court should exercise its discretion to correct plain error only if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Jones v. United States*, 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

Howe's codefendant struck a deal with the government to testify against Howe. In return for his testimony the government agreed to recommend a twenty-five percent downward departure in his sentence. While on the stand during cross examination the codefendant was grilled by Howe's lawyer, who was trying to establish for the jury how much the codefendant's sentence would be reduced on account of his plea agreement. The examination resulted in an exchange that was potentially confusing for the jury:

Q: And, your sentencing range is 37 to 46 months, correct?

A: It depends on my criminal history, but if my—

Q: Does that sound familiar, 37 to 46 months?

A: Yes. Yes, it does.

Q: And, you were promised a deal for testifying here today, weren't you?

A: Yes, I was.

Q: And, you were promised a 25 percent reduction in your sentence, right?

A: Yes, I was.

. . . .

Q: And, you know that the maximum penalty for bank robbery is 25 years?

A: Yes, I do.

Q: And, with this deal, you're going to be serving less than three years, right?

A: No, 37 months. That's three years and a month.

Q: Right, but if you get 25 percent off for testifying here today, that's going to be less than three years, isn't it?

A: The 37 to 46 months is the 25 percent off. That's after. My guidelines—where I stand on the guidelines for this crime, there's a 28

criminal history 3, possible 4, 8–1/2 to 12–1/2 years. 37 months is the plea agreement. That's the lowest.

Q: Okay. So, you're going to be serving three years when you could have been doing 25 years, correct?

A: Yes.

(3 R. at 57–58.)

After the codefendant stepped down, the district court sua sponte addressed the jury to clarify the nature of the codefendant's plea bargain. The court began by noting that the codefendant had entered a plea bargain, and explained that although this was a lawful procedure, the jury should consider the witness's testimony "with more caution and care than that of other witnesses because existence of the plea bargain may be considered as a reason to make a false statement favoring the Government." (*Id.* at 62.) The court went on to explain the nature of the Sentencing Guidelines and its relation to the case:

> So, this mention of the Government's agreement to a departure from what would otherwise be the guideline applicable to [the codefendant] is a reference to a provision in the guidelines that authorizes the Government to make such a motion. The actual determination of the sentence is to be made by in this case me, as the sentencing Judge, after there has been a further investigation and report by a Court officer into the defendant's background and circumstances. So, punishment for the offense that is before the jury, as I will tell you in the final instructions, is not a subject to be discussed by the jury with respect to the defendant. You should not—in the event that you were to find him guilty. Of course, he's presumed not guilty. But, the question of punishment for a person found guilty by a jury must never be considered by the jury. It may be

considered with respect to a witness, as I've just witnessed.

(*Id.* at 63.)

Howe's counsel contends that "[t]here is no doubt that the district court's comments were inappropriate and a misstatement of applicable law and constitutional principles" (Appellant's Br. at 18), because the comments "dealt a disastrous blow to Mr. Howe's presumption of innocence" (*id.* at 19). We fail, however, to see any way in which the court either misstated the law or in any manner undermined Howe's presumption of innocence. Indeed, the court in the above statement specifically stated: "Of course, he's presumed not guilty." (3 R. at 63.) Moreover, the court subsequently reminded the jury three separate times, while giving the jury its instructions, that Howe was to be presumed innocent: "The defendant is presumed to be innocent of the crimes charged." (4 R. at 5.) "I instruct you that you must presume the defendant to be innocent of the crimes charged." (*Id.* at 21.) "The presumption of innocence alone, therefore, is sufficient to acquit the defendant." (*Id.*) The presumption of a defendant's innocence is constitutionally rooted, *see Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir.1990), but the district court did nothing to undermine Howe's presumption of innocence and committed no error. We therefore find no plain error in the record.

### III

■ Howe contends that the district court erred in denying his motion for a judgment of acquittal on the ground that the government failed to introduce evidence sufficient for a jury to conclude beyond a reasonable doubt that the deposits of the bank he robbed were FDIC-insured. On appeal this Court views the evidence in the light most favorable to the government in order to determine whether there is

"sufficient direct and circumstantial evidence, together with reasonable inferences to be drawn therefrom, from which a trier of fact could find the defendant guilty beyond a reasonable doubt." *United States v. Brown,* 200 F.3d 710, 713 (10th Cir. 1999).

In a prosecution for a violation of 18 U.S.C. §§ 2113(a) and (d), proof that a bank's deposits were insured by the FDIC on the date of the crime is a necessary element that the government must prove beyond a reasonable doubt. *See* 18 U.S.C. § 2113(f) (defining a "bank," as the term is used in the statute, as including "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation"); *United States v. Brunson,* 907 F.2d 117, 118–19 (10th Cir.1990) (noting that the government must prove the bank meets this definition).

At trial the government presented a witness, the vice-president of FirstBank of Greeley, who testified that the bank was FDIC-insured on the date of the robbery, October 31, 2000. (2 R. at 36.) The government also offered into evidence a certificate stating that the bank "retained its status as an insured depository institution of the Federal Deposit Insurance Corporation from November 18, 1996 through and including October 13, 2000." (1 R. Supp. at 386–87.) This certificate, sworn to by the Assistant Executive Secretary of the FDIC, notes that "after diligent search, no record or entry in the official records of the Corporation has been found to exist which terminated the status of [this bank] as an insured depository institution." (*Id.* at 386.) Howe stipulated to the admission of the FDIC certificate at trial and did not offer any evidence to show that the bank's deposits were not FDIC-insured.

Howe points out that the certificate specifically establishes only that the bank was insured through October 13, rather than through October 31, the date of the robbery. Having putatively disposed of this piece of evidence, he further notes that no other Circuit has allowed the government to prove a bank's FDIC-insured status based solely on the testimony of a single bank employee. Therefore, he suggests, the evidence before the jury was insufficient to prove the "FDIC-insured" element of the crime.

We find no merit to Howe's argument. Even if the vice-president's uncontradicted testimony were the only evidence entered into the record, it alone would be adequate to prove the bank's FDIC-insured status. *See United States v. Bindley,* 157 F.3d 1235, 1238–39 (10th Cir.1998) (stating that "no circuit appears to require that the FDIC insurance element be satisfied by a particular type of witness or a particular piece of evidence" and concluding that the element was satisfied by a bank teller's testimony that the bank was FDIC-insured). Moreover, drawing all reasonable inferences from the evidence in the government's favor, we think a juror could reasonably conclude that the "October 13" notation in the certificate was a typographical error for "October 31" (with the numerals "1" and "3" transposed), particularly since the Assistant Executive Secretary of the FDIC attested in the certificate that she had found no records to indicate that the bank's FDIC-insured status had been terminated.

IV

Howe's conviction is AFFIRMED.