**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID LESH,

    Defendant - Appellant.

No. 23-1074

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CR-00033-DDD-GPG-1)**
_____

Richard A. Samp (Kara M. Rollins, Counsel of Record, and Mark S. Chenoweth, with her on the briefs), New Civil Liberties Alliance, Washington, D.C., for Defendant-Appellant.

Kyle Brenton, Assistant United States Attorney (Matt Kirsch, United States Attorney, with him on the brief[1]), Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

[1] On May 31, 2024, Cole Finegan resigned as United States Attorney for the District of Colorado. Consequently, Matt Kirsch became Acting United States Attorney for the District of Colorado. He has been substituted for Cole Finegan as Acting United States Attorney.

David Lesh is a content creator on social media and owner of an outdoor apparel brand. At the beginning of the pandemic, Mr. Lesh posted two Instagram photos of himself snowmobiling over a jump in a terrain park at Keystone Resort, Colorado, at a time the ski resort was closed. The United States charged him with two crimes based on National Forest Service (NFS) regulations: (1) using an over-snow vehicle on NFS land off a designated route, and (2) conducting unauthorized work activity on NFS land. After a bench trial conducted by a magistrate judge, he was convicted of both counts.

Mr. Lesh challenges the sufficiency of the evidence to support his conviction and makes various constitutional arguments. We affirm in part and reverse in part. While Mr. Lesh was properly convicted of essentially trespassing under NFS regulations, his conviction for unauthorized work activity pursuant to 36 C.F.R. § 261.10(c) must be reversed. The regulation does not fairly warn social media users that posting images on the Internet could constitute a federal crime with imprisonment up to six months. For that reason, § 261.10(c) is impermissibly vague as applied to Mr. Lesh's conduct.

## I.    Background[2]

Keystone Resort is located on NFS lands within the White River National Forest. NFS lands are property of the United States of America, but the Forest Service leases acreage to Keystone Resort. The resort is one of many ski areas

---

[2] These facts were found by the magistrate judge to be true beyond a reasonable doubt.

2

owned by the Vail Corporation and closed to the public in April 2020 due to the COVID-19 pandemic.  Numerous closure signs were posted around Keystone Resort.

On April 25, 2020, the Director of Mountain Operations for Keystone Resort was alerted to two photographs posted on Mr. Lesh's Instagram account that day. The photos—posted on his verified account "@davidlesh"—depict Mr. Lesh[3] driving a snowmobile over a jump in a terrain park.  The caption reads: "Solid park sesh, no lift ticket needed."  Later, Mr. Lesh added the hashtag "#fuckvailresorts."

Keystone Resort employees also discovered someone had taken a shovel from a utility shed near the terrain park and dug a path through a snow barrier that was built to make the park inaccessible.  The path was large enough for a snowmobile to access the jump, and the snowmobile tracks indicated the snowmobiler went over the jump multiple times and rode his snowmobile around other parts of the closed resort.

In the following months, Mr. Lesh posted two more photos on Instagram of him ostensibly on closed NFS lands in Colorado.  In one, he posted a photo of himself standing on a log in the middle of Hanging Lake, a popular hiking trail in central Colorado.  Another post showed him defecating in Maroon Lake near Aspen. Mr. Lesh claims he photoshopped the images.

A few months later, in January 2021, the *New Yorker* published a profile of Mr. Lesh entitled "Trolling the Great Outdoors."  It quotes Mr. Lesh as saying "[t]he

---

[3] The district court upheld the magistrate judge's factual determination that the individual pictured snowmobiling was Mr. Lesh, and he does not challenge this finding.

3

more hate I got, the more people got behind me, from all over the world . . . .  It was an opportunity to reach a whole new group of people—while really solidifying the customer base we already had."  He went on to claim that he posted the Hanging Lake and Maroon Lake images because he "wanted [the government] to charge me with something.  The only evidence they have is the photos I posted on Instagram, which I know are fake, because I faked them.  I was pissed off about them charging me for the snowmobiling . . . with zero evidence.  I realized they are quick to respond to public outcry.  I wanted to bait them into charging me."  The article also notes that Mr. Lesh markets his clothing brand, "Virtika," on social media and that sales increased after he posted the photo at Hanging Lake.  In a later interview, Mr. Lesh said "nothing [in the *New Yorker* article] was untrue or unfair, but it only captures one aspect of me, one part of my life, one part of our marketing, one part of my company."

Mr. Lesh was initially charged in September 2020 with violating 36 C.F.R. § 261.14 for improperly using an over-snow vehicle on NFS land.  He was also charged with five additional counts related to his entry into Hanging Lake, but these were later dropped.  In February 2021, the United States filed a superseding indictment adding a new charge under 36 C.F.R. § 261.10(c) for conducting work activity at Keystone Resort.

Following a bench trial, a magistrate judge found Mr. Lesh guilty of both charges.  He was required to pay $5,000 for each count, plus a special assessment of

$25 per count, and perform 160 hours of community service.  The district court

affirmed his convictions.

## II.    Analysis

Mr. Lesh makes four arguments on appeal:  (1) the government failed to

present sufficient evidence to demonstrate his guilt on either count, (2) § 261.10(c) is

overly vague and violates his Fifth Amendment rights, (3) the statute authorizing

promulgation of the two regulations lacks an intelligible principle, and (4) he was

deprived of his Sixth Amendment right to a trial by jury.[4]

We address each in turn.

### A.  Operating a snowmobile in violation of 36 C.F.R. § 261.14

Mr. Lesh argues the government was required to show that the NFS lands had

"been designated for over-snow vehicle use" and that "these designations [had] been

identified on an over-snow vehicle use map."  Aplt. Br. at 17.  Specifically, Mr. Lesh

asserts the over-snow vehicle use map, of which the magistrate judge took judicial notice,

does not satisfy the evidentiary burden.

The Department of Agriculture regulations prohibit snowmobiling except on

terrain that has been designated for that purpose and snowmobilers have notice of

permitted terrain:

> *After* National Forest System roads, National Forest System trails,
> and areas on National Forest System lands *have been designated for*

---

[4] Mr. Lesh also argues he was punished for posting photos on Instagram in violation of
his First Amendment free speech rights.  Because we conclude there was insufficient
evidence to convict Mr. Lesh pursuant to § 261.10(c), and because that section is vague
as applied to him, we need not reach his First Amendment argument.

*over-snow vehicle use* pursuant to 36 CFR 212.81 on an administrative unit or a Ranger District of the National Forest System, *and these designations have been identified on an over-snow vehicle use map*, it is prohibited to possess or operate an over-snow vehicle on National Forest System lands in that administrative unit or Ranger District other than in accordance with those designations[.]

36 C.F.R. § 261.14 (emphasis added).[5]

At trial, the government did not affirmatively present evidence of map-posting. But as a part of his ruling on the charge, the magistrate judge took judicial notice of a publicly available "winter motor vehicle use map" provided online by the Forest Service. The map indicates Keystone Resort is not an area designated for snowmobile use. The magistrate judge therefore concluded Mr. Lesh operated a snowmobile on NFS lands outside of areas designated for snowmobile use.

Mr. Lesh claims the judicially noticed map is insufficient to satisfy the notice requirement of § 261.14 because it is not clear when it was published—in other words, because the map does not have a date of publication, it is unclear whether it was posted before Mr. Lesh accessed the terrain park. Mr. Lesh argues that "the fact of which the magistrate judge sought to take judicial notice—that the Forest Service had posted an over-snow vehicle use map. . . as of April 24, 2020—is simply not

---

[5] "Designation[s] . . .  for over-snow vehicle use shall be reflected on an over-snow vehicle use map.  Over-snow vehicle use maps shall be made available to the public at headquarters of corresponding administrative units and Ranger Districts of the National Forest System and, as soon as practicable, on the Web site of the corresponding administrative units and Ranger Districts.  Over-snow vehicle use maps shall specify the classes of vehicles and the time of year for which use is designated, if applicable."  36 C.F.R. § 212.81.

capable of accurate and ready determination." Aplt. Br. at 21 (internal quotation marks omitted).

But Mr. Lesh makes this argument for the first time on appeal. We therefore find Mr. Lesh has waived this challenge to the propriety of the magistrate judge's judicial notice.[6]

After trial, Mr. Lesh moved for leave to file an untimely motion for judgment of acquittal but did not challenge judicial notice. Then, on appeal to the district court, Mr. Lesh challenged the sufficiency of the government's evidence: "the Government provided not an iota of proof for one [] element, specifically that the over-snow designations be made available to the public." Aplt. App. Vol. I at 89. He—again—did not challenge the judicial notice as improper, argue the judicially-noticed map was undated, and did not question whether it was posted before he accessed the terrain park. "When a defendant challenges in district court the sufficiency of the evidence on specific grounds, all grounds not specified in the motion are waived." *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (internal quotation marks omitted). Mr. Lesh did not raise this judicial notice argument at the magistrate level nor before the district court. Thus, he failed to preserve it for review on appeal.

Mr. Lesh also fails to argue plain error. "When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the

---

[6] Mr. Lesh also challenges the magistrate judge's alternative holding—that closure signs are a sufficient replacement for an over-snow vehicle map in this case. We need not reach this argument because Mr. Lesh waived his judicial notice argument.

issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). "We might elect to consider Defendant's argument if the Government neglected to raise either Defendant's failure to preserve his insufficient-evidence challenge or his failure to argue for plain error in his opening brief." *Id.* at 1199. But the government raised Mr. Lesh's failure to argue plain error in his opening brief. Thus, under these circumstances, we do not believe reviewing Mr. Lesh's judicial notice argument would serve the adversarial process.[7]

Mr. Lesh next argues Congress impermissibly delegated authority to the Department of Agriculture as applied to both § 261.14 and § 261.10(c). Congressional delegation arises because, "in our increasingly complex society, replete with ever changing and more technical problems, [the Supreme Court] has understood that Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Gundy v. United States*, 588 U.S. 128, 135 (2019) (internal quotation marks omitted). But the nondelegation doctrine provides that **"**a statutory delegation is constitutional as long as Congress lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Id.* (internal quotation marks omitted).

---

[7] Even if we were to conclude Mr. Lesh preserved this argument, we do not find it persuasive. Section 261.14 was adopted in 2015 and directed over-snow vehicle maps be made available to the public as soon as practicable. *See* § 212.81.

Congress delegated authority to the Department of Agriculture to promulgate the regulations for which he was convicted. *See* 7 U.S.C. § 1011(f). Mr. Lesh argues this delegation is improper because the statutory delegation does not contain an intelligible principle. He made this same argument to the magistrate judge: "[T]his legislative delegation [gives] the Department of Agriculture free reign to issue whatever criminal prohibition it wishes . . . . [Which] runs afoul of the separation of powers and nondelegation doctrines." Aplt. App. Vol. I at 30–31. But he then made a *different* argument to the district court: "On its face, this was a *narrow* delegation of authority to the Executive Branch to regulate activities occurring *on* the land. Here, the Executive attempted to expand that authority to cover activities not contemplated by Congress." *Id.* at 94 (emphasis added). Simply put, Mr. Lesh argued before the district court that the government extended the reach of this otherwise narrow delegation to conduct occurring *off* NFS land—into his home, when he clicked "post" on the Instagram photo.

Now, Mr. Lesh attempts to resurrect his initial argument made to the magistrate judge—that the statutory delegation violates the nondelegation doctrine because it fails to articulate an intelligible principle. But, "[o]rdinarily, a party may not lose . . . on one theory of the case, and then prevail on appeal on a different theory." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (citing *Lone Star Steel v. United Mine Workers of Am.*, 851 F.2d 1239, 1243 (10th Cir. 1988)). At the district court, Mr. Lesh argued the regulation was impermissible because it extended to conduct that took place *off* NFS land. Thus, he assumed below that the regulation was otherwise permissible *on*

9

NFS land.  A party "may not on appeal change its theory and take a position inconsistent therewith."  *Saulsbury Oil Co. v. Phillips Petroleum Co.*, 142 F.2d 27, 34 (10th Cir. 1944).  We therefore decline to consider this resurrected—and inconsistent—theory.

\*\*\*

Because Mr. Lesh failed to preserve his appellate arguments, we affirm his conviction for using an over-snow vehicle on NFS land off a designated route in violation of 36 C.F.R. § 261.14.

### B.  Conducting Work Activity in Violation of 36 C.F.R. § 261.10(c)

Mr. Lesh makes two arguments challenging his conviction of unauthorized work activity on public lands.  First, that the regulation is impermissibly vague, such that neither he (nor anybody) could discern that taking Instagram photos on off-limits NFS lands would constitute a crime.  Second, he challenges the sufficiency of the evidence to support the conviction.

#### 1.  Void for Vagueness

Mr. Lesh contends the regulation, as applied to his conduct, is impermissibly vague.[8]  "The Fifth Amendment provides that [n]o person shall . . . be deprived of

---

[8] The government argues Mr. Lesh failed to preserve this argument.  Although Mr. Lesh never previously used the phrase "void for vagueness," he did argue before the district court that he did not have notice his conduct fell within the scope of this regulation.  For instance, he argued "[t]he Supreme Court has long recognized [t]he basic principle that a criminal statute must give fair warning of the conduct that makes it a crime[.]"  Aplt. App. Vol. I at 96.  And that he "could not have anticipated that a regulation prohibiting the *sale of merchandise* or *conducting work activity on federal land* would be used to prosecute him for posting a photograph on social

life, liberty, or property, without due process of law." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (internal quotation marks omitted). "Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." *United States v. Davis*, 139 S. Ct. 2319, 2326 (2019) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). "Vague laws also undermine the Constitution's separation of powers . . . [because] [they] threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Id*. *See also Sessions v. Dimaya*, 584 U.S. 148, 175 (2018) (Gorsuch, J., concurring in part) ("[V]ague laws . . . can invite the exercise of arbitrary power[,] . . . leav[e] [] people in the dark about what the law demands[,] and allow[] prosecutors and courts to make it up.").

A statute or regulation is vague on its face, and thus void, where "no set of circumstances exists under which the [regulation] would be valid." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 741 (1987)). In contrast, a statute or regulation can also be void for vagueness "as applied to particular parties in particular circumstances." *Wyoming Gun Owners v. Gray*, 83 F.4th 1224, 1234 (10th Cir. 2023). "[A]n as-applied challenge

---

media depicting an unidentifiable individual engaged in recreational snowmobiling." *Id.* at 97 (emphasis in original). We therefore find this argument preserved.

tests the application of that restriction to the facts of a plaintiff's concrete case." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248–49 (10th Cir. 2023) (quoting *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014)).  Mr. Lesh's argument is an as-applied vagueness challenge.[9]

Section 261.10(c) prohibits "[s]elling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization."  § 261.10(c).  We have previously examined this provision in the context of a sale of services on NFS land.  In *United States v. Brown*, the defendant was convicted for outfitting and guiding snowmobile tours on NFS land without a special use permit.  200 F.3d 710, 711–12 (10th Cir. 1999).  In upholding the conviction, we noted "[r]eceipt of payment [] is not a required element under § 261.10(c)," but emphasized that the defendant delivered snowmobiles to customers who "fully expected to pay for the experience."  *Id.* at 714–15.  We also determined "[t]he key is whether the sale or offer of sale of merchandise or the work activity or service is a commercial activity."  *Id.* at 714 (citing *United States v. Strong*, 79 F.3d 925, 928–30 (9th Cir. 1996)).

---

[9] Mr. Lesh also brings a facial challenge for the first time on appeal.  We need not address this challenge because we afford him the requested relief through his as-applied challenge.  *Citizens United v. Gessler*, 773 F.3d 200, 209 (10th Cir. 2014) ("[A]lthough the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute, we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants.") (quoting *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477–78 (1995)).

This interpretation is harmonious with other parts of the regulation. Section 261.2 defines "commercial activity" as any activity on NFS lands "(a) where an entry or participation fee is charged, or (b) where the *primary purpose* is the sale of a good or service, and in either case, regardless of whether the use or activity is intended to produce a profit." (emphasis added).

The district court concluded Mr. Lesh's behavior at Keystone Resort qualified as a "work activity" under the regulation because "[it] was reasonably clear . . . that taking photographs to promote a clothing line, which is unquestionably work activity, would have been prohibited on National Forest lands without authorization." Aplt. App. Vol. I at 184–85. We disagree. Under the facts here, Mr. Lesh would not have concluded that his off-limits snowmobiling to take Instagram photos was a "work activity" in violation of federal law.

The void for vagueness doctrine addresses two concerns: "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Wyoming Gun Owners*, 83 F.4th at 1233 (citing *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012)). A law or regulation can be unconstitutionally vague "for either of [these] two independent reasons." *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* Section 261.10(c) fails on both scores: "work activity" does not inform citizens like

Mr. Lesh "what is required of [them] so [they] may act accordingly" and it lacks the necessary "precision and guidance [][] so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox Television Stations, Inc.*, 567 U.S. at 253.

First, as to notice, Mr. Lesh's conduct of conviction boils down to snowmobiling on restricted land and then later posting a picture of the trespass on Instagram. But the regulation did not inform him that this type of conduct constituted a "work activity." *See Black's Law Dictionary* 1780 (rev. 4th ed. 1978) (defining "work" as "[t]o exert one's self for a purpose, to put forth effort for the attainment of an object, to be engaged in the performance of a task, duty, or the like").

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited," *United States v. Gaudreau*, 860 F.2d 357, 361–62 (10th Cir. 1988) (citations omitted), and it "simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed," *United States v. Morales-Lopez*, 92 F.4th 936, 941 (10th Cir. 2024) (citing *Parker v. Levy*, 417 U.S. 733, 757 (1974)). "Criminal statutes must be more precise than civil statutes because the consequences of vagueness are more severe." *Gaudreau*, 860 F.2d at 360.

Given that § 261.10(c) prohibits (1) any work activity, or the sale or offer of merchandise, (2) for the primary purpose of selling goods or services, irrespective of actual receipt of consideration, the question is whether a person of ordinary intelligence could reasonably understand that Mr. Lesh's conduct is prohibited.

14

We evaluate whether the regulation is vague as applied to Mr. Lesh with respect to Mr. Lesh's *actual* conduct.  The government determined Mr. Lesh engaged in "work activity" on NFS lands when he took a photo of himself snowmobiling for his social media account.  Mr. Lesh is a self-proclaimed "social media influencer,"[10] meaning he invests time into taking photos for social media.  He also owns the brand Virtika and uses social media to advertise his products.  But the snowmobiling post did not refer to or tag Virtika, no Virtika products were visible, and the photos were posted to his personal Instagram—as opposed to Virtika's Instagram account.[11]

A Ninth Circuit case, *Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1028 (9th Cir. 2009), is instructive.  There, the court considered a Montana regulation that defined "in-kind expenditures" in the state's election code.  It was defined as "the furnishing of services, property, or rights without charge or at a charge which is less than fair market value to a person, candidate, or political committee for the purpose of supporting or opposing any person, candidate, ballot issue or political committee."  *Id.*  The defendant was accused of placing campaign

---

[10] Merriam-Webster Dictionary online defines an "influencer" as "a person who is able to generate interest in something (such as a consumer product) by posting about it on social media."  *Influencer*, Merriam-Webster, https://www.merriam-webster.com/dictionary/influencer (last visited April 29, 2024).

[11] Mr. Lesh's conduct is more analogous to "still photography"—or the creation of content—which is defined as a non-commercial activity under 36 C.F.R. § 251.50(c). "Still photography," defined as the "use of still photographic equipment on [NFS] lands that takes place at a location where members of the public generally are not allowed . . . or uses models, sets, or props," § 251.51, requires a special authorization.  But Mr. Lesh was not charged pursuant to this section.

literature in a Church's foyer and then exhorting parishioners to sign a petition during a sermon. Montana's election commissioner argued that this was an in-kind expenditure on behalf of the petition campaign.

But the Ninth Circuit determined that, as applied, the "in-kind expenditure" is impermissibly vague because "an activity that might not appear to be an expenditure becomes one if the activity turns out to have been of value to the beneficiary. . . . Such uncertainty does not provide people of ordinary intelligence a reasonable opportunity to understand whether their activities require disclosure under the statute." *Id.* at 1029 (internal quotation marks omitted).

So too here: although "work activity" as a phrase may have a clear meaning in the abstract, it becomes vague when applied to Mr. Lesh's conduct. Any activity that might not appear to be a work activity could later become one if an individual owns a brand or has a social media presence. The regulation therefore does not provide people of ordinary intelligence a reasonable opportunity to understand what kind of conduct is prohibited. A snapshot of a model who works for Patagonia, or an employee of REI, or a celebrity on a ski day, are all potential victims of the government's interpretation.

Given today's tendencies to take photos to promote oneself on social media, the notice standards are not satisfied here. In *Smith v. Goguen*, the Supreme Court determined a Massachusetts statute that subjects to criminal liability anyone who "publicly . . . treats contemptuously the flag of the United States" to be vague. 415 U.S. 566, 568 (1974). The Court noted that

16

> casual treatment of the flag in many contexts has become a widespread contemporary phenomenon . . . [and] in a time of widely varying attitudes and tastes for displaying something as ubiquitous as the United States flag or representations of it, it could hardly be the purpose of the Massachusetts Legislature to make criminal every informal use of the flag.

*Id.* at 574.

Similarly, taking photos for social media has become a widespread contemporary phenomenon.  And it could not be the regulation's purpose to criminalize all such behavior as a work activity simply because an individual's identity is tied to his or her work.

Like *Smith*, where "[t]he statutory language . . . fail[ed] to draw reasonably clear lines between the kinds of nonceremonial treatment that are criminal and those that are not . . . and [] men of common intelligence [will] be forced to guess at the meaning of the criminal law," *id*., an ordinary person in Mr. Lesh's position would also be forced to guess at what social media posts constitute a prohibited work activity.  Under the government's theory, Mr. Lesh's social media presence is inextricable from his job.  And that may be true in some sense.  But Mr. Lesh did not conduct a Virtika shoot on NFS land; he created personal content for his personal page.  That distinction is significant.  *See also Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 782 (4th Cir. 2023) (quoting S.C. Code Ann. § 16-17-530(A)(1)–(2)) (finding criminal statute unconstitutionally vague).

Thus, the phrase "work activity" is vague as applied to Mr. Lesh—whose *personal* life is in many ways inextricable from his *commercial* life—because it failed to provide

sufficient notice his conduct constituted a crime.  In addition, one manifestation of the fair warning requirement "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."  *United States v. Lanier*, 520 U.S. 259, 266 (1997).  To our knowledge, this regulation has never before been applied to punish conduct of this kind.

We separately conclude the regulation is void for vagueness as applied because it "encourages arbitrary and discriminatory enforcement."  *Hill*, 530 U.S. at 732.  To this end, we consider whether "the [regulation] is so imprecise that discriminatory enforcement is a real possibility."  *Wyoming Gun Owners*, 83 F.4th at 1237 (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051 (1991)).  "We recognize that we cannot expect mathematical certainty in statutes," *id.* at 1239 (citations omitted), but "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them," *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).  "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis."  *Id.*  Without "such minimal guidelines, a criminal [regulation] may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."  *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citations omitted).

As applied to Mr. Lesh, § 261.10(c) does not provide "sufficient guidance to law enforcement to dispel the fear of subjective enforcement."  *United States v. Corrow*, 119 F.3d 796, 804 (10th Cir. 1997).  "What renders a statute vague is not the possibility

18

that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). As the regulation is currently interpreted by the government, any individual who takes a photo on NFS land is subject to criminal penalties, contingent on the ambiguous criteria of whether he or she owns a business or has a large social media following.

It is one thing to require a movie producer or a photographer for *Vogue* to seek a permit for using public lands to conduct their business. But it is another thing to say that same individual is liable under the regulation when he or she visits NFS lands for a ski trip and makes a personal video for Instagram. Under the government's theory, and confirmed at oral argument, any person who takes a photo at Keystone Resort and later posts it on a social media account could be arrested if the posting bore some proximal relationship to a commercial undertaking. Given the breadth of this argument, it invites arbitrary and subjective enforcement of the regulation. Like in *Wyoming Gun Owners*, the regulation vests unfettered discretion in the hands of the government to determine whether a suspect has committed a violation on an "ad hoc and subjective basis." 83 F.4th at 1238 (quoting *Grayned*, 408 U.S. at 109). [12]

---

[12] Nor is the regulation susceptible to a limiting construction. "Even assuming that a more explicit limiting interpretation of the [regulation] could remedy the flaws we have pointed out . . . we are without power to remedy the defects by giving the [regulation] constitutionally precise content." *Wyoming Gun Owners*, 83 F.4th at 1239 (quoting *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 622 (1976)). "We cannot press statutory construction to the point of disingenuous

In sum, as applied to Mr. Lesh's conduct, the regulation is impermissibly vague.

### 2. *Sufficiency of the Evidence*

We separately conclude the evidence was insufficient to find his photoshoot at Keystone Resort was a "work activity or service" under § 261.10(c). "We review de novo the sufficiency of the evidence, viewing all evidence and any reasonable inferences drawn therefrom in the light most favorable to the conviction." *United States v. Fernandez*, 24 F.4th 1321, 1326 (10th Cir. 2022) (citing *United States v. Christy*, 916 F.3d 814, 843 (10th Cir. 2019)). "[E]vidence is sufficient to support a conviction if . . . a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Cope*, 676 F.3d 1219, 1225 (10th Cir. 2012) (citing *United States v. Hoskins*, 654 F.3d 1086, 1090 (10th Cir. 2011)). "We will not weigh conflicting evidence or second-guess the fact-finding decisions of the [trial] court." *Id.* (quotations omitted). "This review is highly deferential." *United States v. Burtrum*, 21 F.4th 680, 685 (10th Cir. 2021) (quotations omitted).

As defined above, § 261.10(c) prohibits the sale or offer for sale of any merchandise, as well as any *work activity* or service, when such activities are engaged in with the *primary purpose* of selling goods or services for consideration—even if no consideration is ever received. If Mr. Lesh did not post the snowmobiling

---

evasion even to avoid a constitutional question." *Id.* (internal quotation marks omitted).

photos with the primary purpose of selling goods or services, then he did not engage in a work activity in violation of § 261.10(c).

The government argues Mr. Lesh engaged in a work activity because his Instagram photos effectively marketed his brand Virtika. And the magistrate judge agreed, concluding Mr. Lesh embarked on a marketing campaign beginning with the Keystone Resort snowmobiling photos and relied on social media to stir up controversy and press while using NFS lands as the backdrop. The magistrate judge also pointed to Mr. Lesh's statements in the *New Yorker* article: "[t]he more hate I got, the more people got behind me. . . . It was an opportunity to reach a whole new group of people—while really solidifying the customer base we already had[,]" and his statement that Virtika's "annual sales . . . were up thirty percent since he'd posted the photo at Hanging Lake." The magistrate judge concluded Mr. Lesh's activities at Keystone Resort were commercial in nature and without authorization. The district court agreed and affirmed that a reasonable trier of fact could conclude the snowmobiling photos were driven by the purpose of promoting Virtika through social media.

Mr. Lesh challenges the sufficiency of the evidence and contends the government failed to prove his primary purpose in photographing his snowmobiling activities was for the sale of goods or services. We agree. The fact that Mr. Lesh creates content for Instagram, owns his own brand, and has a large Instagram following does not mean his primary purpose with every post is to sell or market Virtika products. No goods or services were advertised in the post. Nor did it reference or tag Virtika. No

Virtika products were visible in the post, and it was posted to his personal Instagram—not on Virtika's Instagram account. While the posts may have contributed to his "bad boy" persona, that is far too tenuous a connection to his apparel line to fall within the ambit of the regulation. The government's view of Mr. Lesh's conduct would criminalize even the most petty or innocuous social media post. That view could apply to thousands of persons whose crime would be a photo op on public lands.

The *New Yorker* article does not save the day. In the interview, Mr. Lesh espoused several motivations for his social media content, including to get back at the government, to go after Vail Resorts, and to increase his Virtika customer base. Even if he had *some* commercial motivation, that does not mean his *primary purpose* in posting the snowmobiling photos was to sell goods or services. Nor did the district court make a primary purpose finding in evaluating Mr. Lesh's conduct. In some more precise circumstances, the creation of marketing content on NFS land may constitute a work activity, but not here.

In sum, we conclude the evidence was insufficient to prove beyond a reasonable doubt that Mr. Lesh posted the snowmobiling photos with the primary purpose of exchanging goods or services.

### C. Sixth Amendment Right to Jury Trial

Finally, Mr. Lesh contends he was deprived of his constitutional right to a trial by jury. The Constitution's text provides for a trial by jury of "all crimes," art. III, § 2, and "[i]n all criminal prosecutions," amend. VI. Binding Supreme Court

precedents limit the jury trial right to "serious" infractions punishable by six or more months of imprisonment. *Blanton v. City of North Las Vegas, Nev.*, 489 U.S. 538, 542 (1989). Mr. Lesh nevertheless argues he is entitled to a jury trial because the petty offense exception "contradicts the Constitution's text" and is "untethered from the Framers' understanding of that right." In this case, the maximum penalty that Mr. Lesh faced under either charged regulatory violation was "a fine of not more than $500 or imprisonment for not more than six months, or both." 16 U.S.C. § 551. Accordingly, unless and until the Supreme Court reexamines the scope of the Sixth Amendment right to a jury trial, we must conclude Mr. Lesh was not deprived of his Sixth Amendment right.

### III.    Conclusion

We affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

23-1074, *United States v. Lesh*

**TYMKOVICH**, Circuit Judge, concurring.

Judge Rossman joins in the concurrence.

Under prevailing precedent, Mr. Lesh was not deprived of his Sixth Amendment right.  But the correct scope of the Constitution's right to a trial by jury may warrant a closer examination by the Supreme Court.

Although the text of the Constitution provides for a trial by jury of "all crimes," art. III, § 2, and "[i]n all criminal prosecutions," amend. VI, the Supreme Court has not interpreted the jury right to attach to every violation of public law. Instead, the Court understands the right as applying to only "serious infractions"— not to "petty offenses." *Duncan v. Louisiana*, 391 U.S. 145, 160–61 (1968).[1]  To distinguish between a serious and petty offense "the maximum penalty attached to the offense [is the] criterion [] considered the most relevant . . . because it reveals the legislature's judgment about the offense's severity." *Lewis v. United States*, 518 U.S. 322, 326 (1996) ("The judiciary should not substitute its judgment as to seriousness

---

[1] In early cases the Court instructed the existence of the jury right was to be determined by examining whether the nature of the offense "at common law . . . was entitled to be tried by a jury." *Callan v. Wilson*, 127 U.S. 540, 549 (1888).  But over time the Court found the "common-law approach [was] [] undermined by the substantial number of statutory offenses [which] lack[ed] common-law antecedents." *Blanton v. N. Las Vegas*, 489 U.S. 538, 541 (1988).  As a result, the Court instead held the jury right turned on whether an offense was "serious"—determined by looking to "objective criteria, chiefly the existing laws and practices in the Nation." *Duncan*, 391 U.S. at 161.

1

for that of a legislature, which is far better equipped to perform the task.") (citations omitted).

Consequently, in a series of Supreme Court opinions which defer to Congress's statutory definition of what constitutes a "petty offense," the Court established a near-bright-line rule which separates serious from petty offenses at the six-month imprisonment mark. *See Baldwin v. New York*, 399 U.S. 66, 70–71, 74, n.6 (1970) (plurality opinion) ("[A] potential sentence in excess of six months' imprisonment *is sufficiently severe by itself* to take the offense out of the category of 'petty'" and require a jury trial. ) (emphasis added). Similarly, in *Blanton*, the Court held that if an offense carries a maximum prison term of six months or less the right to a jury trial presumptively does *not* apply because the "disadvantages of such a sentence" for the accused "may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications." 489 U.S. at 542 (citations omitted).[2]

In this case, the maximum penalty that Mr. Lesh faced under either charged regulatory violation was "a fine of not more than $500 or imprisonment for not more than six months, or both." 16 U.S.C. § 551.[3] He argues that he is entitled to a jury

---

[2] The Court did recognize there could be the "rare situation" where an offense carries a maximum six-month prison term but contains "additional statutory penalties" that are "so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Id.* Here, Mr. Lesh does not argue the additional statutory penalties for his charged offenses—a $500 fine under each—would create such a situation.

[3] Section 261.1b provides that "[a]ny violation of the prohibitions of this part (261) shall be punished by a fine of not more than $500 or imprisonment for not more than six months or both pursuant to [16 U.S.C. § 551], unless otherwise provided." 18 U.S.C. § 3559(a)(7) classifies offenses with a maximum term of imprisonment of six months or

2

trial because the exception for petty offenses "contradicts the Constitution's text" and is "untethered from the Framers' understanding of that right." But binding precedent forecloses this theory. He was charged with two petty offenses, neither of which carried the potential for more than six months' imprisonment. Accordingly, under *Blanton*, because Mr. Lesh was only charged with two petty counts, he was not entitled to a jury trial. *See* 489 U.S. at 543.[4]

But we note the Court's doctrine has not escaped criticism for its disregard of the text of Article III and the Sixth Amendment. Justice Black wrote separately in *Baldwin* to disagree "with the view that a defendant's right to a jury trial under the Sixth Amendment is determined by whether the offense charged is a 'petty' or 'serious' one." 399 U.S. at 75 (Black, J., concurring).

> This decision is reached by weighing the advantages to the defendant against the administrative inconvenience to the State inherent in a jury trial and magically concluding that the scale tips at six months' imprisonment. Such constitutional adjudication . . . amounts in every case to little more than judicial mutilation of our written Constitution. Those who wrote and

---

less as Class B misdemeanors—which encompasses the two charged offenses against Mr. Lesh. Under 18 U.S.C. § 3571(b)(6), the maximum fine for a Class B misdemeanor was increased to $5,000, which is what the district court ordered Mr. Lesh to pay for each count.

[4] Mr. Lesh alternatively argues that because he was charged with multiple petty offenses—each with a possible penalty of six months imprisonment—a court could apply the charges consecutively to create a term of imprisonment longer than six months. But, as Mr. Lesh concedes, this argument is squarely foreclosed by binding Supreme Court precedent—thus his alternative argument also relies on his broader constitutional challenge to the Court's doctrine. *See Lewis*, 518 U.S. at 330 ("Where the offenses charged are petty, and the deprivation of liberty exceeds six months only as a result of the aggregation of charges, the jury trial right does not apply.").

> adopted our Constitution and Bill of Rights engaged in all the balancing necessary. They decided that the value of a jury trial far outweighed its costs for all crimes and in all criminal prosecutions.

*Id.* (internal quotation marks omitted).

Additionally, multiple scholars have argued the Court's doctrine is incompatible with the original public understanding of the Constitution. *See e.g.*, Andrea Roth, *The Lost Right to Jury Trial in "All" Criminal Prosecutions*, 72 Duke L.J. 599, 605–607 (2022) (asserting that "based on previously unexplored historical sources and text-based arguments, that the petty offense exception is untenable" and "the jury right must at a minimum include federal criminal cases in which defendants are formally prosecuted by a United States Attorney and subject to punishment"); Laura Appleman, *The Lost Meaning of the Jury Trial Right*, 84 Ind. L.J. 397, 398–99 (2009) (arguing the Court's "latter-day interpretations have shifted the meaning of the jury trial right well away from its original meaning," which "was strictly a collective right . . . allowing the local community to hand down a public punishment and then restore the offender back to his place in society"); Colleen Murphy, *The Narrowing of the Entitlement to Criminal Jury Trial*, 1997 Wis. L. Rev. 133, 134–35 (1997) (stating "the Court's decisions have produced an unduly restrictive interpretation of the entitlement to jury trial . . . [and the Court] has distorted the constitutional meaning of the jury right").

The Court's doctrine directs the judiciary to rely primarily on the legislative branch's "judgment" about the severity of an offense, and, in turn, that judgment

4

completely defines the scope of the Article III and Sixth Amendment right to a trial by jury.

> Ceding to the political branches ground they wish to take in the name of efficient government may seem like an act of judicial restraint.  But enforcing Article III isn't about protecting judicial authority for its own sake.  It's about ensuring the people today and tomorrow enjoy no fewer rights against governmental intrusion than those who came before.

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1386 (2018) (Gorsuch, J., dissenting).

Under current doctrine, the judicial imperative of interpreting the fundamental-to-liberty jury right has been abdicated to the legislative branch, or in this case even the executive branch.  But such discretion "in regard to criminal causes is abridged by the express injunction of trial by jury in all such cases."  The Federalist No. 83, at 467 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis added).  The Framers all agreed as to the value of the criminal jury trial, and "regard[ed] it as a valuable safeguard to liberty . . . [and] as the very palladium of free government."  *Id.*

5